ORIGINAL COPY

15-71059
GERALD TUCKER V. DANIEL PARAMO

Plaintiff's Name GERALD L. TUCKER, In Pro Per
Inmate No. K-93107 Fac.A. Bld.5, 109,
Address R.J. DONOVAN CORR. CENTER,
480 ALTA ROAD,
SAN DIEGO, CA. 92179

ACTUAL INNOCENCE,

FILED
JUN 0 8 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD L. TUCKER,
(Name of Plaintiff)

1:15 CV - 00857 - BAM PC
(Case Number)

vs.

COMPLAINT

Civil Rights Act, 42 U.S.C. § 1983

PHILLIP J. CLINE, et al., D.A.
Ms. KIMBERLY SMITH, Deputy D.A.
DAVID L. ALAVEZOS, Deputy D.A.
Mr. THOMAS LUTTRELL, Ex-DETECTIVE
Mr. BRIAN HANEY, DETECTIVE
Mr. DOUGLAS REESE, FRESNO POLICE DETECTIVE
Mr. VERNON HENSLEY, VISALIA SHERIFF DEPT.
(Names of all Defendants) Cont. on next page 1a.

RECEIVED
JUN 08 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY CLERK

I. Previous Lawsuits (list all other previous or pending lawsuits on back of this form):

A. Have you brought any other lawsuits while a prisoner? Yes

B. If your answer to A is yes, how many? N/A
Describe previous or pending lawsuits in the space below.
(If more than one, use back of paper to continue outlining all lawsuits.)

1. Parties to this previous lawsuit:

Plaintiff ____

Defendants ____

2. Court (if Federal Court, give name of District; if State Court, give name of County)

3. Docket Number ____ 4. Assigned Judge ____

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

6. Filing date (approx.) ____ 7. Disposition date (approx.) ____

Cont. from Page 1

Mr.ART NAVA, VISALIA, CA DETECTIVE
Ms.LAURA SLAUGHTER, M.D.
Mr.EDWARD BLAKE, M.D.
Mr.JOHN JACKSON, Deputy D.A.
Mr.FREDERICK E. ALLEN, CHIEF PROBATION OFFICER
Ms.LEANNE WILLIAMS, SUPER.PROBATION OFFICER
Mr.JAMES M. KORDELL, CLAIMANT/DEFENDANT'S ATTORNEY
IMPERIAL WIZARD OF THE KU KLUX KLAN,

II. Exhaustion of Administrative Remedies

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes X No___

B. Have you filed an appeal or grievance concerning ALL of the facts contained in this complaint?

Yes X No___

If your answer is no, explain why not

C. Is the process completed?

Yes X If your answer is yes, briefly explain what happened at each level.
State Remedies have been exhausted at all levels

No___ If your answer is no, explain why not.
THE SUPREME COURT, BIVENS V. SIX UNKNOWN AGENTS, 403 U.S. 388,
THREE YEARS, 5 MONTHS ADVERSE PUBLICITY.)
IN-SKINNER V. SWITZER U.S.

NOTICE: Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit. Booth, 532 U.S. at 734.

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant PHILLIP J. CLINE, et al. is employed as the District Attorney for Tulare County at Tulare, California

B. Additional defendants See Page 1. through 1a. for listing of Additional Defendants,

MR. ARI NAVA, VISALIA, CA. DETECTIVE
MS LAURA SLAUGHTER, M.D.
MR. EDWARD BLAKE, M.D.
MR. JOHN JACKSON, DEPUTY D.A.
MR. FREDERICK E. ALLEN, CHIEF PROBATION OFFICER
MS LEANNE WILLIAMS, SUPER. PROBATION OFFICER
MR. JAMES M. KORDELL, DEFENDANT'S ATTORNEY, KU KLUX KLAN

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

The Said Defendants conspired to frame Claimant of Murder/Rape charges from a crime of such that occurred in, or around, 1969. The Conspiracy to do such was by way of Illegal Search and Seizure by kidnapping Claimant, taking him to some unknown Hospital to withdraw Claimant's blood without Claimant being named as a suspect in any crime; then taking Claimant's blood sample to plant it on the 30 years old evidence, thereby establishing a False Arrest of Claimant as Suspect. Since then, Claimant has consumed his time trying to seek relief from this Conspiracy, only to be met with retaliatory actions from State Officials at the prisons Claimant has housed at, currently Pleasant Valley State Prison ("PVSP"). The most recent being, Associate Warden R.M. Trimble, Warden James Yates, and a number of Medical Staff, have tampered with Lab Test to inject unknown chemicals in the vials of my blood seeking to kill me off. Meanwhile, the cause of death of the victim in the crime Claimant was framed with, exonerates him. (continued)

GROUND →

V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

Claimant requests Compensatory, Punitive, Nominal, Mental Anguish, Attorney Fees and Costs, and MONETARY DAMAGES, totaling $50,000,000.00 (50 Million); and Declaratory/Injunctive Relief, plus any other relief deemed appropriate by this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Date JUNE 4, TH 2015 Signature of Plaintiff Gerald L. Tucker

(revised 2/10/2006)

COURT OF APPEAL
FIFTH APPELLATE
2424 VENTURA STREET
FRESNO, CA. 93107

STATEMENT OF THE CASE

Criminal Law Procedure and Practice

COURT OF APPEAL County of Fresno

P.C. 290, (MIRANDA Rights Violation.)

1). Comment of statement of Brian Haney, contacted Det. Reese Fresno Police Dept... Detective Doug Reese had arrested Mr. Tucker on the streets in Fresno, Ca. Fresno Police Department had no jurisdicition as the of Los Angeles County if any, Tucker was arrested pushing a shopping cart in Fresno, Mr Doug advised Mr. Brian Haney that he would research the records, For a violation of section 290 Failure to register as a sex offender... They stated Mr. Tucker was out of compliance For 290 requirements to register as a sex offender. There's no evidence presented in the court ______ that a failure to register had occurred or exsited... Arrest warrants are issued by a judge or magistrate pursuant to penal code 814, 815, 1427,.

A complaint couched solely in the statutory language of the charged offense will not support an arrest warrant. See People v. Thompson (1970) 6 CA 3d 945, 950, 86 CR 327, 331.

The United States Supreme Court in Illinois v. Gates (1983) 462 US 213, 76 LEd 2d 527, 103 SCT 2317; Peoples v. Rosales (1987) 192 CA3d 759, 768 237 CR 558, proof of the reliability of information and its origin are no longer separate and independent requirements to be rigidly exacted in every case. The Illinois v Gates, test also applies to arrest warrants...

Jurisdiction-is composed of Two Elements, Personal and subject matter jurisdiction. Burns v. Municiple Court, (1961) 195 CA 2d 596, 599, 16 CR 64, 67; People v. Jones (1964) 228 CA 2d 74, 82, 39 CR 302, 306; Any judgment without subject matter Jurisdiction matter is void. Taliaferro v. County of Contra Costa, (1960) 182 CA 2d 587, 6 CR 231. Gerald L. Tucker was not a Resident of Fresno or Tulare County territory Jurisdiction did not exist in county of Fresno as crime was not alleged to have been committed. People v Crise (1990) 224 CA 3d Supp. 1, 274 CR 242 Penal Code 1462.2.

SEARCH WITH-OUT A WARRANT,

WITH RESPECT TO SECONDARY EVIDENCE, I.E., EVIDENCE THAT WAS SUBSEQUENTLY OBTAINED THROUGH EVIDENCE DIRECTLY SEIZED BY ILLEGAL CONDUCT, THE DEFENDANT BEARS THE INITIAL BURDEN OF MAKING A PRIMA FACIE CASE THAT THE SECONDARY EVIDENCE WAS CAUSALLY LINKED TO THE PRIMARY ILLEGALITY. PEOPLE V. WILLIAMS, (1988) 45 C3d 1268, 248 CR 834).

THE ILLEGALITY OF TAKING PETITIONER'S BLOOD WITHOUT HIS PERMISSION ON AND ABOUT FEBRUARY 12TH, 1998, MUST BE SUPPRESSED PURSUANT TO MIRANDA RIGHTS VIOLATION.

THERE WAS NO VIOLATION OF PENAL CODE SEC. 290, WAS NO VIOLATION OF ANY CRIME.

JUNE 4TH, 2015.

Gerald L. Tucker

Statement of Claim from P.3 ¶1-9,

Ground 1: State briefly the ground on which you base your claim for relief.

ACTUAL INNOCENCE & INSUFFICIENT EVIDENCE. FIRST, FIFTH, SIXTH, AND FOURTEENTH AMENDMENT VIOLATIONS.

a. Supporting facts:
Tell your story briefly without citing cases or law.

The victim Wilma Jean McNutt's death was not a murder and has never bee ruled a murder by a competent doctor or cornner. A"corner's autopsy is mandated by law and the resulting report must identify the manner, cause, and circumstances of the death. In 1969, one Wilma Jean McNutt was found dead in her home. A Coroner's inquest found her death occurred between 11:00 p.m. and 12:30 a.m. A Dr. Jude Hay as Pathologist issued a certificate of death for Ms. McNutt and found her death was due to or caused by a pulmonary edema or asphyxiation of gastric contents. How Dr. Don Miller documented he embalmed Ms. McNutt before the autopsy was perform on the orders and under the supervision of the Home Peace Cemetery. Which is the coroner's office for the Sheriff's department. The autopsy was documented with a held tape recorder. Microscopic slides and samples of blood, urine, gastric, as other fluids were taken from the body for toxicology examination. (RT. Volume pages 227-503).

b. Supporting cases,

Ground 1:
Supporting Facts: (continued) Ms. Joane Erwin, Records Supervisor of the Tulare County Sheriff's Department, maintained the original reports and records of the original investigation in this case on microfilm, after the District Attorney decided not to file this case as a murder on or about June 13, 1972. In or about (29) years after Ms McNutt's death a new district attorney determined she was murdered and raped despite the original coroner inquest which ruled her death to be an acute pulmonary edema caused by asiration of gastric contents. Furthermore, Forensic Pathologist, Charles Weili, testified he must go along with Dr. Hayes' observations and description as correct and he could only rely on what Dr. Hayes documented in his autopsy and what he subsequently documented by photographs and he could see nothing in the reports or photographs that contradict each other and some things they're going to have to accept eventhough you might disagree with other pathologist interpretation of the findings or observations. (RT. volume 4, pages 867-868, and Exhibits A-D).

The district attorney used as evidence blown-up photographs which depicted marks that did not appear on the original photographs that were taken of Ms. McNutt's deceased body. The blown-up photographs were over-exposed and contained blue and red marking which appeared at first glance to be injuries or abraisions. The photographs were then photo-shoped in an attempt to correct the over-exposure. However, more blue markings came out on the photographs. The following testimony was given in regards to the photographs:

MS. SMITH (DA): "So what I did is place one of the original photos where it was somewhat over-exposed and I attached that to the back so they will have that compari and I will talk about that with the doctor."

MR. STOREY (DEFENSE ATTORNEY): "If they're not going to testify from the blow-up why don't you use the original photograph?"

MS. SMITH (DA): "He's going to testify to this blow-up that I am holding in my han

Ground 1:
Supporting Facts: (continued) (People's Exhibit 20), he wants to testify to the abrasions on the neck which is clearly depicted on the picture."

MR. STOREY (DEFENSE ATTORNEY).: "I was objecting to the marks that are on the blow-up because they are not on the original photograph."

MR. STOREY (DEFENSE ATTORNEY): "The best evidence is the body. We don't have the body but we have a photograph and then we have an enlargement or altered photograph it is clear that the blow-up is not an accurate picture because of the blue marks that are on it."

MS. SMITH (DA): "I am presenting the court with the blow-up, the people have produced and offerred it into evidence."

MR. STOREY (DEFENSE ATTORNEY): "The blow-up of the original pictures cause over-exposure and they look different as though there are red and blue markings on the victims body. The blow-up distort the original picture and adds additional markings which aren't in the original photograph." (RT. volume 4, pages 717-718).

MS. SMITH (DA): "The doctor is going to testify that those markings were not on the body and when the photographs were taken those were not the injuries on the body it was something that occurred in the photographic process." (RT. volume 4, pages 735-738).

Ms. Wilma McNutt died of mechanical asphyxia in other words, something was obstructing her airway, nose, mouth, neck, or a combination of both. But basical mechanical asphyxia, a person could be strangled with a ligature or strangled manual or a object placed across the neck to prevent the person from breathing. (People's Exhibits 15, 20, 25, 26, 27, & 28).

(Thirdly), Ms. McNutt had evidence of severe pulmonary edema. Pulmonary edema is a term meaning the lungs fill up with a lot of fluid and they may mix with residual air forming a foamy---foamy like material, and this was seen in the photog: and the lungs also were very heavy. These are very heavy and to the point where

Ground 1:
Supporting Facts: (continued) residual air forming foamy--foamy like material, and this was seen in the photographs and the lungs also were very heavy. These are very heavy and to the point where it literally forms a foam cone or -- on the mouth. You actually see the foam around the mouth.

The American Medical association, Home Medical Encyclopedia, volume 1 & 2 pages 271, 945, and 953 (1989): Choking, suffocation, asphyxia, strangulation. What it does provide is a clear, systematic account of state-of-the-art, validated medical knowledge reviewed and endorsed by expert physicians selected by the American Medical Association. Choking, asphyxia may be due to aspiration (inhaling vomit) during a bout of coughing, suffocation, obstruction, or blockage of air into the lungs.

Mr. James Sargent, M.D. Pathologist, 1969; Dr. Jude Hayes, M.D. Pathologis Deputy Coroner Paul Ruiz, M.D. Pathologist, 1969; Dr. Don Miller, M.D. Embalmed, and Dr. Charles Wetli, M.D. Forensic Pathologist. Also, there is no word in the Medical Dictionary as "Mechanical Asphyxia" that could be found. There is five coroners that they're findings and testimony in court under oath, alleges protocol, that it was a very thorough examination, Doctor Hayes followed the established "corc autopsy as mandated by law, manner, cause, and circumstances of death." (VCF-98-5964

DECLARATION

Plaintiff, Gerald L. Tucker, declare that he is the plaintiff in this action.

Plaintiff, under penalty of perjury says that as of his belief and know the foregoing statement are true and correct.

Dated: June 4Th 2015.

Respectfully Submitted,
Gerald L. Tucker
Gerald L. Tucker
Plaintiff in pro-per

CONT. ... Supporting Facts:

criminalist Steve Myer's. He obtained the vials with chemicals in the blood from Dr. Blake, Forensic Science Associates an independent lab., Richmond, CA.

Cpl. Haney testified tnat he hand delivered the vials of blood to For--ensic Science Associates. Criminalist Steve Myer's of the Berkeley, CA. Forensic Science DNA Laboratory, testified that he could not say the DNA was petitioner's, an African American's, or a Caucasian's.

Criminalist Scott Lewis of the Fresno Regional Laboratory for DNA, testified that he did not detect any sperm on the pubic hair with a laser. Item's that he claimed to have found a spot of blood and a sperm spot on a blouse were tested by the Dept. of Justice Lab. of December 27, 1969. The criminalist Don Stottlemyer's, deceased, after test, found nothing on the items. Those items as alleged to have a sperm and a blood spot, were destroyed November 27, 1970. Also, the prosecution, Cpl. Haney, officer Luttrell and Dr. Blake statements were false, as there was no DNA of 1969.

Dr. Blake stated that the degradation of nonrefrigerated sperm of (29) years, would be hard or impossible to test but he obtained "fresh sperm with tails intact" (29) years later and contaminated vials of blood with chemicals mixed in the blood, to state petitioner as the donor.

Dr. Wetli's testimony and opinion was false, as to Ms McNutt's cause of death. He verbally changed the autopsy report of Dr. Jude Hayes findings that the absence of evidence of strangulation supports the impression that Ms McNutt was not manually strangled. (Coroner's Report, page 1413.) Dr. Wetli, verbally changed his opinion to mechanical asphyxia, a homicide because the autopsy report and the real cause of death by coroner Jude Hayes was not before the jury, as the exculpatory evidence was withheld by the prosecution.

Dr. Wetli testified that he observed (two) or (three) photographs that were blowups with lines that were not in the photo's around Ms McNutt's neck.

CONT. -3



June 4th, 2015

CONT. ...

Supporting Facts:

His opinion of mechanical asphyxia came from blueness around the mouth and something that cut off the victim's oxygen, without the original or negati- -ves of photographs in evidence of the autopsy, as exculpatory evidence was destroyed.

Dr. Wetli and the prosecution withheld exculpatory evidence, as to Ms McNutt's "time of death." Coroner Jude Hayes and Dr. Wetli, did not know the time of death as to "rigor mortis" but the prosecution set the time of death when petitioner did not have an alibi. The neighbor stated that she heard noises from Ms McNutt's apartment at 2:45 a.m. or 3:00 a.m. and another neighbor stated she saw a white or blue Ford Thunderbird in the parking lot around 2:45 a.m. December 20, 1969. A reserve police officer drove a white Thunderbird who lived in the apartment complex by the name of Oscar Atamian of December 19th, 20th, 1969.

Dr. Wetli and the prosecution withheld exculpatory evidence from the jury, that the body was embalmed with body liquids removed and then inject- -ing a fluid containing formaldehyde, mercuric chloride, zinc chloride, and alcohol. All of these chemicals would cause blueness around Ms McNutt's mouth. "The law require that every cause of death be verified by a physic- -ian or by a coroner's jury, as was done in this case.

Dr. Laura Slaughter testified as a expert rape counsel, seen three or four autopsy's. Dr. Slaughter's, the body was not exhumed, exculpatory evidence was destroyed, as there was no tissue samples, no slides, no microscopic material and the photographs were blowup and was not the origi- -nal or negative of photographs of the victim. Dr. Slaughter and the prose- cution alleged an sexual assault had occurred with testimony to the jury for a conviction. The prosecution and newspapers of Tulare County ran adverse publicity over three years, five months of a rape and homicide which never occurred. Dr. Slaughter's testimony after she observed one

CONT. .. -4

CONT. ... Supporting Facts:

blowup photograph, no slides, no tissue samples, no sperm, and no evidence of a rape kit, with both pathologists, deceased and present, stating there was no sexual assault. Dr. Slaughter's false opinion by reading the same autopsy report and findings of both pathologists, was that she was sexually assaulted.

The prosecution, investigator Art Nava, Cpl. Haney, officer Luttrell, defense attorney Paul Storey and the court were aware of the false, and fabricated testimony of the prosecution's star witness. Ms Sherrel Galbraith a.k.a. Meluqian, that she had not seen petitioner before and could not pick his photo out of a number of photo's upon an investigation by detective Luttrell and detective Chamberlain of December 21, 1969. Mrs Galbraith testified at the preliminary hearing, that she read about petit--ioner's case in the newspaper and could not identify petitioner in court, March or April, 2000.

Mrs. Galbraith's entire testimony was false and fabricated under "oath," as everything she testified too, was retracted upon cross-exam by defense counsel Storey at trial.

Mrs. Galbraith testified that she saw petitioner (two)-times before December, 1969, at the door of Ms McNutt, which she recanted upon being cross-examined by counsel Storey. Mrs. Galbraith testified that she saw petitioner with his foot in Ms McNutt's door around 7:00 p.m. or 8:00 p.m., December 19, 1969, which was false and a fabrication, as Mr. Esmond McNutt and wife, Gloria McNutt, brother, sister-in-law, testified Wilma McNutt was at their residence at 7:00 p.m. to 12:30 a.m. or 1:30 a.m. of the morning of December 20, 1969.

Mr. Fred L. Ford, brother of petitioner, ex-Sheriff's Department employee and ex-Probations Department Juvenile employee for the County of Tulare, testified petitioner was at his home around 7:00 p.m. to 12:30 a.m.

CONT. . -5

offender. His driver's license lists --

MR. MUETING: Whoa.

(Discussion held off the record between Ms. Smith and Investigating Officer Brian Haney)

MS. SMITH: I'm sorry. As a narcotics offender. Narcotics offender, not a sex offender.

Thank you. It does show that he is deceased, as far as his driver's license.

The only other record of the witnesses would be with respect to Cheryl Galbraith a.k.a. Melugian who appears to have from March of 1978, March twentieth, 1978, a conviction for P.C. 476(a)(b), non-sufficient funds or checks, in which she received a sentence of three years probation. Again, I don't have a case number with respect to that. That's all.

MR. MUETING: Does the rap sheet show whether Hays' conviction was a felony or misdemeanor?

MS. SMITH: No. It just says "conviction of a Federal offense; distributing controlled substances".

THE COURT: You have the rap sheets? How many do you have?

MR. MUETING: Your Honor, in 1969 we were actually entitled to rap sheets --

MS. SMITH: Well --

MR. MUETING: -- which is when this offense took place.

# CERTIFICATE OF DEATH

STATE OF CALIFORNIA — DEPARTMENT OF PUBLIC HEALTH

**DECEDENT PERSONAL DATA**

- 1A. NAME OF DECEDENT—FIRST NAME / 1B. MIDDLE NAME / 1C. LAST NAME: [illegible]
- 2A. DATE OF DEATH: December [illegible] 1969 / 2B. HOUR: 11:00 [illegible]
- 3. SEX: Female
- 4. COLOR OR RACE: Caucasian
- 5. BIRTHPLACE: California
- 6. DATE OF BIRTH: October 19, 1944
- 7. AGE: 25
- 8. NAME AND BIRTHPLACE OF FATHER: Wilbur J. McNutt, California
- 9. MAIDEN NAME AND BIRTHPLACE OF MOTHER: [illegible] N.H.
- 10. CITIZEN OF WHAT COUNTRY: USA
- 11. SOCIAL SECURITY NUMBER: [redacted]
- 12. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED: Never Married
- 13. NAME OF SURVIVING SPOUSE: None
- 14. LAST OCCUPATION: Social Worker
- 15. NUMBER OF YEARS IN THIS OCCUPATION: 2
- 16. NAME OF LAST EMPLOYING COMPANY OR FIRM: Tulare County
- 17. KIND OF INDUSTRY OR BUSINESS: Social Welfare

**PLACE OF DEATH**

- 18A. PLACE OF DEATH—NAME OF HOSPITAL OR OTHER IN-PATIENT FACILITY: [illegible]
- 18B. STREET ADDRESS: 1170 East Sierra Apt. #12
- 18C. INSIDE CITY CORPORATE LIMITS: Yes
- 18D. CITY OR TOWN: Tulare
- 18E. COUNTY: Tulare
- 18F. LENGTH OF STAY IN COUNTY OF DEATH: 25
- 18G. LENGTH OF STAY IN CALIFORNIA: 25 YEARS

**USUAL RESIDENCE**

- 19A. USUAL RESIDENCE—STREET ADDRESS: 1170 East Sierra Apt. #12
- 19B. INSIDE CITY CORPORATE LIMITS: Yes
- 19C. CITY OR TOWN: Tulare
- 19D. COUNTY: Tulare
- 19E. STATE: California
- 20. NAME AND MAILING ADDRESS OF INFORMANT: Wilbur McNutt (Father), 77 South Cloverleaf, Porterville, California

**PHYSICIAN'S OR CORONER'S CERTIFICATION**

- 21A. CORONER: Investigation
- 21B. PHYSICIAN: [illegible]
- 21C. PHYSICIAN OR CORONER—SIGNATURE AND DEGREE OR TITLE: Bob Wiley-Sheriff Coroner [signature]
- 21D. DATE SIGNED: 12-30-1969
- 21E. ADDRESS: Visalia, California

**FUNERAL DIRECTOR AND LOCAL REGISTRAR**

- 22A. SPECIFY BURIAL, ENTOMBMENT OR CREMATION: Burial
- 22B. DATE: 12-24-1969
- 23. NAME OF CEMETERY OR CREMATORY: Home of Peace Cemetery
- 24. EMBALMER—SIGNATURE / LICENSE NUMBER: Donald Miller 4104
- 25. NAME OF FUNERAL DIRECTOR: Loyd Funeral Service
- 26. DATE ACCEPTED FOR REGISTRATION BY LOCAL REGISTRAR: [illegible]
- 27. LOCAL REGISTRAR—SIGNATURE: [illegible]
- 28. [illegible]

**CAUSE OF DEATH**

29. PART I. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR A, B, AND C)

- IMMEDIATE CAUSE (A): Acute Pulmonary Edema
- DUE TO, OR AS A CONSEQUENCE OF (B): Aspiration of Gastric Contents
- DUE TO, OR AS A CONSEQUENCE OF (C):

CONDITIONS, IF ANY, WHICH GAVE RISE TO THE IMMEDIATE CAUSE (A), STATING THE UNDERLYING CAUSE LAST. APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH.

- 30. PART II. OTHER SIGNIFICANT CONDITIONS:
- 31. [illegible]: No
- 32. [illegible]: Yes
- 33. [illegible]: Yes

**INJURY INFORMATION**

- 33. SPECIFY ACCIDENT, SUICIDE OR HOMICIDE:
- 34. PLACE OF INJURY: Home
- 35. INJURY AT WORK: No
- 36A. DATE OF INJURY: Unknown
- 36B. HOUR: Unknown
- 37A. PLACE OF INJURY (STREET AND NUMBER OR LOCATION AND CITY OR TOWN): 1170 East Sierra Apt. 12 Tulare, Calif.
- 37B. [illegible]: -0-
- 38. [illegible]: Yes
- 39. [illegible]: Yes
- 40. DESCRIBE HOW INJURY OCCURRED: Injuries of Unknown Origin

STATE REGISTRAR: A. B. C. D. E. F.

EXHIBIT - C

500

CONCLUSION, the foregoing facts and exhibits established good cause for bringing a Civil Rights action on plaintiff's behalf.

Dated: June 4th 2015.

Respectfully,

Gerald L. Tucker

Gerald L. Tucker

7 Ground 2 or Ground ______ (if applicable)

ACTUAL INNOCENCE/PROSECUTORIAL MISCONDUCT, "PERJURY" IN VIOLATION OF PETITIONERS CONSTITUTIONAL RIGHTS, PURSUANT TO THE 5th, 6th, 14th AMENDMENTS AND TO DUE PROCESS

a. Supporting facts:

On and about April 18th, 2002, Mrs. Sherrel Galbraith, A.K.A. Sherrel Melgian, a convicted felon, committed perjury, RT 498–499, Vol. 3, 504 to 703), as she testified that Tucker had his leg or foot in Wilma McNutt's front door, like, "let me in now". December 19th, 1969, Mrs. Galbraith lied and her testimony could not cover the fact that after work, Ms. W. McNutt drove over to Visalia, CA. to visit her brother, Esmond and Gloria McNutt, her sister-in-law and kids. Where she stayed very late at their home, (RT 389-458), December 19th, 1969, a friday, the night or morning of her death. Petitioner, was at his brothers home, Mr. Freddie L. Ford (ex-Deputy Sheriff of Tulare County and his wife Anna Mae Ford, her sister Benny, with a friend named Terry (RT p. 1735, Vol. 9). Sherrel Galbraith made a "deal" with the Prosecution to commit perjury by the false statements she made trying save her son from going to prison for sales of drugs and other crimes Whom son was in the county jail with Petitioner. Maria Elena Gudin A. Mary Mendez, the same person, committed perjury, again under a differe name. All the charges dismissed (RT. 1445-1449), motion granted dismissal due to insufficient evidence and in the furtherance of just

(PLEASE SEE ATTACHED EXHIBITS- )

GROUND 2 b. Supporting cases, rules or other authority;

P.C. sec 118(A) PC. sec 127 PC. sec 132, PC. sec 134, 118(A) False affidavits as to affiants testimony. Stanton v Superior court, (1987 193 Cal. App. 3d 265, PC. sec, 132 testifyiing To False Evidence; Prosecutors Misconduct, False Testimony, Sixth amend. of the Const.

Wilma McNutts, Esmond McNutt and his wife Gloria McNutt's testified that Wilma drove to Visalia, Ca. on the evening of December 19th, 1969, and stayed very late. With that testimony, there is no way Ms McNutt nor Tucker was seen together December 19th or 20th, 1969 at her apartme in Tulare, Calif. (12) or (14) miles from Visalia, Ca. RI

Maria Elena Gudin A.K.A. Mary Mendez:

(Please see attached exhibits)

A.Judges Adjudicative Responsibilities

Canon 3(B)(2): A Judge shall be faithful to the law regardless of partisan interest, public clamor, or fear of criticism and shall maint professional competence in the law.

Exhibits

A 1 ESMOND + GLORIA McNUTTS 359,

B 2 SHERREL GALBRAITH, 485

C 3 MARY HELEN MENDEZ, 1447

D 4 DNA-STEVEN MYERS

E 5

Ground 3,

Petitioner was denied effective assistance of counsel, as competence is demanded of attorneys in criminal cases. The counselors failure to object to in consistence of testimony as to the evidence of perjury, deprived petitioner of a fair trail.

In this case testimony of 37,38, years ago changed or altered as to each event to achieve a favorable result for the prosecution, denied petitioner a fair trail. Counsel elicited inadmissible hearsay accusing the defendent of murder; as damaging evidence, is ineffective assistance of counsel.

Dr Charles Wetli, MD forensic patholgist, I must go along with Dr Jude Hayes observation or descriptions as correct. I can only rely on what he has in his autopsy report and what he subsequintly what he's also documented by photographs I see nothing in the report or the photographs that contradict each other. Some things they're just going to have to accept. You might disagree with each other pathologist interpretation of the findings or observation Mon. April 22, 2002, Vol4 Rt pages 867,868 (6)(a) supporting facts, connsel's failure to move the court for dismissal of the charges after the coroner's testimony, autopsy, ~~of murder~~ as mandated by law manner cause and circumstances of death. Denial of effective assistance of counsel.

Ground 4

Denial of Equal Protection and Due Process as to the charged offense in violation of the Constitution pursuant to the Fifth, 14th amendment.

Actual Innocence Exception, 28a,

Washington v Hargett,S,D, Miss(1995)889F Oct 15th 2003, Supp.260 Jordan Steiker 41 UCLA L Rev 303

Haley v Cockrell,325F,3d 569 (5th cir March 19th 2003), New Orleans based, was able to show long after his claim should have been filed that one of the convictions was not a felony because of a judges ruling that he did not use a weapon."Fundamental Miscarriage of Justice".Titled 28 US Code Ann. Judicial Procedure, 2254,seeking a new trail or resending in a habeas petition and who was procedual barred from doing so can win relief if they show they are Actullly Innocent of a charge.

"ACTUAL INNOCENCE"

Tulare County Superior Court People v Tucker Case#CVFO-59644-98 Motion for DNA testing pursuant to Penal Code sec 1405 was granted and a motion for appointment of attorney, Mr Jay Powell due to illness or death, failed to inform me of the results of the American Society of Crime Laboratory Directors Laboratory Accreditation Board. Honorable Gerald F Sevier, Judge.

A defendants Federal Canstitutional right to a fundamentally fair trail is guaranteed by the Due Process clause of the Fifth and 14th amendment. (Medina v Calif. (1992)505 US__:120L Ed.2d 353,363.

Exhibit(I)

SUPERIOR COURT OF CALIFORNIA
COUNTY OF TULARE
Visalia Division
County Civic Center, Room 124
Visalia, CA 93291-4593

| | |
|---|---|
| People<br>Plaintiff/Petitioner,<br><br>vs.<br><br>Tucker, Gerald Lee<br>Defendant/Respondent. | Case No. VCF059644-98 |

## CLERK'S CERTIFICATE OF MAILING (CCP 1013a(4))

I certify that I am not a party to this action.

The order appointing counsel for DNA testing pursuant to PC 1405 was mailed first class, in a sealed envelope, postage prepaid, to the parties at the addresses shown. The mailing and this certification occurred at the place and on the date shown.

Dated: December 7, 2006 at Tulare, California.

LARAYNE CLEEK, CLERK OF THE
SUPERIOR COURT, COUNTY OF TULARE

By [signature]
Deputy Clerk

Gerald L. Tucker
High Desert State Prison
PO Box 3030
Susanville, CA 96127

Tulare County District Attorney's Office
David Alavezos
Via Interoffice Mail

Jay W. Powell
Tulare County Conflict Counsel Office
Via Interoffice Mail

# VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS PURSUANT To The 14th AMENDMENT And The Process (1)

A declaration That The acts and omissions described herein violated plaintiff's Rights under the Constitution And Laws of The United States.

The plaintiff has no plain, adequate or complete remedy at law To redress The wrongs described herein. Plaintiff has been and will continue To be irreparably injured by The conduct of The defendants unless This Court grants The declaratory and injunctive relief which plaintiff seeks.

Plaintiff seeks declaratory relief pursuant To 28 U.S.C. Section 2201 and 2202."

Plaintiff claims for injunctive relief are Authorized by 28 U.S.C. Section 2283 + 2284 And Rule 65 of The Federal Rules of Civil Procedure."

The Court has supplemental jurisdiction over plaintiff's State Law claims under 28 U.S.C. Section 1367. " Pathologist or Coroner's Autopsy as Mandated by Law." Manner, Cause + Circumstances of Death."

" City Manager of Tulare County," is Legally (he) or (she) Responsible For The overall operations of Tulare County, Each employee, Department or Agency under it's jurisdiction, did willfully and intentionally in (her) or (his) official capacity, After The Facts, conspired To hide The Truth That, Gerald L. Tucker, did not commit an act of murder or rape, as neither, never occurred." of The year 1969 or 1999. defendant acted under The color of State Law. Each defendant is sued individually and in his or her official capacity.



Continue........ on (2) page-2 of (4).

(2)

VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS PURSUANT TO THE 14 AMENDMENT AND DUE PROCESS.

MR. PHILLIP J. CLINE, DISTRICT ATTORNEY, EACH DEFENDANT IS SUED INDIVIDUALLY AND IN (HIS OR HER) OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW.

THE ALLEGED HOMICIDE AND RAPE WERE A "FRAUD" AS WELL AS THE DNA THAT WAS PLANTED BY CONSPIRATORS ON AND ABOUT FEBRUARY 12TH, 13TH 1998, WHICH WAS TAILS AND SPERMS AFTER (30) YEARS. THIS WRONGFUL CONVICTION, CAUSED LOSS FREEDOM, MENTAL STRESS, STROKE, INJURY RIGHT FOOT AND RIGHT HAND AND ARM." APRIL 8, 2002,

MS KIMBERLY SMITH, DEPUTY DISTRICT ATTORNEY, EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER) OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW. THE ALLEGED HOMICIDE AND RAPE WERE A "FRAUD" AS WELL AS THE DNA THAT WAS PLANTED BY POLICE OFFICER, BRIAN HANEY ON AND ABOUT FEBRUARY 12TH, 13TH 1998, WHICH TAILS AND SPERMS AFTER (30) YEARS, CONTAMINATED. LOSS OF FREEDOM, MENTAL STRESS, STROKE, INJURY RIGHT FOOT AND RIGHT HAND AND ARM." APRIL 9, 2002,

MR. DAVID L. ALAVEZOS, DEPUTY DISTRICT ATTORNEY, EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW. THE ALLEGED HOMICIDE AND RAPE WERE A FRAUD AS WELL AS THE DNA THAT WAS PLANTED BY POLICE OFFICER, BRIAN HANEY ON AND ABOUT FEBRUARY 12TH, 13TH 1998, WHICH TAILS AND SPERMS AFTER (30) YEARS,

CONTINUE ON PAGE 3 OF (4).

VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS PURSUANT TO THE 14TH AMENDMENT AND DUE PROCESS, 

CONTAMINATED. LOSS OF FREEDOM, MENTAL STRESS, STROKE, INJURY RIGHT FOOT AND RIGHT HAND AND ARM." APRIL 8, 2002.

MR. THOMAS LUTTRELL, EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER) OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW. MR. LUTTRELL, CONSPIRED WITH HIS FELLOW POLICE OFFICERS, UPON INFORMATION AND BELIEF, TO FRAME PLAINTIFF BY PLACING HIS BLOOD ON A FEW ITEMS OF MS MCNUTT'S CLOTHING. CONVICTION, LOSS OF FREEDOM, MENTAL STRESS, STROKE, INJURY RIGHT FOOT AND RIGHT HAND ARM. "THE RAPE AND HOMICIDE NEVER OCCURED AND THE DNA WAS A FRAUD". MON. MARCH 13, 2000.

MR. BRIAN HANEY, TULARE POLICE OFFICER, EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW. MR. HANEY, UPON INFORMATION AND BELIEF, WAS AWARE FROM THE CORONER'S REPORT THAT THERE WAS NO HOMICIDE OR RAPE AND THE DNA AS BLOOD, SPERM WITH TAILS WAS A FRAUD". LOSS OF FREEDOM, MENTAL STRESS, STROKE, INJURY RIGHT FOOT AND RIGHT HAND ARM." WED. MAY 1, 2002.

MR. VERNON HENSLEY, VISALIA SHERIFF DEPT., EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT



CONTINUE........
ON PAGE 3 OF (4)

VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS PURSUANT TO THE 14TH AMENDMENT AND DUE PROCESS.



EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW. UPON INFORMATION AND BELIEF, MR. HENSLEY GAVE TESTIMONY, MON. APRIL 22, 2002, THAT HE TAKEN EVIDENCE FROM THE BODY OF MS McNUTT'S MATTED PUBIC HAIRS WITH SEMEN. 1969. THE DNA WAS INCONCLUSIVE AND SPERMS WITH TAILS AFTER (30) YEARS, NO ONE IS TALKING. (CORONER'S AUTOPSY AS MANDATED BY LAW, MANNER, CAUSE, AND CIRCUSTANCES OF DEATH.) THREE YEAR'S AND ADVERSED PUBLICITY AGAINST PETITIONER WITH 5-MONTHS.

MR. DOUGLAS REESE, FRESNO, CA. POLICE DEPT. EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW.

DETECTIVE REESE, VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS PURSUANT TO THE 5TH, 14TH AMENDMENT, HE DID NOT HAVE JURISDICTION TO ARREST PLAINTIFF'S PURSUANT TO PENAL CODE SECTION 290 TO REGISTER AS PLAINTIFF DID NOT LIVE IN FRESNO, CA., THE CALIFORNIA SUPREME COURT, IN PEOPLE-V-GARCIA, 2001, DJDAR 5377, HELD THAT AMONG OTHER THINGS, A DEFENDANT MUST HAVE ACTUAL KNOWLEDGE OF SEX OFFENDERS REGISTRATION REQUIREMENT IN ORDER TO VIOLATE STATUTE. PEOPLE-V-NORTH, (2003) DJDAR 11323, OCT. 10TH 2003, I DO NOT BELIEVE THAT A TRANSIENT OFFENDER SHOULD REGISTER IN EVEY JURISDICTION.) P.C. SEC. 290.(A) (A)(1)(B)(F)(1), ARE VOID.

ALSO, PETITIONER WAS ARRESTED BY THE FRESNO DEPT. OF CORRECTIONS VIOLENT SUPPRESSION UNIT AS A PAROLE VIOLATER. PLAINTIFF WAS NOT ON PAROLE AND TWO (2) TULARE, DEPARTMENT DETECTIVES BRIAN HANEY 1/20/99, AND MR. BARRY JONES, TAKEN A TAPED INTERVIEW OF MRS. HIAWATHA CALHOUN



CONTINUE.......
PAGE 4 OF (5.)

Violation of Civil and Constitutional Rights Pursuant to the 14, Amendment and Due Process. (5)

Alleged victim of (1955) Rape, Robbery, Kidnapping, states plaintiff told the truth, case No. 175204, Los Angeles County. "I was not robbed as I did not have any money."

Mr. Edward Blake, M.D. Forensic Science Associates. Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

Upon information and belief, Mr. Blake M.D., DNA, "Fraud," in this case VCF-59844, as guilt by association with Mr. Brian Haney, A Ku Klux Klan member who hates blacks as I am A Tulare County resident in the pass years.

Mr. Haney, states that he has a lot of friends at Forensic Science Associates" when he testified in court.

Mr. Steven Myer's, Senior Criminalist California Dept. of Justice DNA Laboratory in Berkeley, California, He analyze evidence from crime scenes.

I received (2) vials of blood from Forensic Science Associates on and about June 10, 1998, the difference being that there were different chemicals that were actually in the tubes of blood. "Contamination," as of the evidence presented.

The sperms with tails still attached, observed under a microscope by Mr. Myer's and the chemicals in the blood. Sent to Mr. Myer's on June 10th, 1998, already tampered with when it arrived at the Berkeley, Ca., DNA Laboratory. May 1, 2002. (Second time.) The defendant violated plaintiff's Gerald Tucker, Civil and Constitutional Rights persuant 5th, 6th, 14th,

Continue.....

VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS PURSUANT TO THE 14TH AMENDMENT DUE PROCESS. 

CORONER'S AUTOPSY AS MANDATED BY LAW, MANNER, CAUSE, AND CIRCUMSTANCES OF DEATH, AMENDMENT TO THE UNITED STATES CONSTITUTION.

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGMENT GRANTING PLAINTIFF:

A PRELIMINARY AND PERMANENT INJUNCTION ORDERING DEFENDANTS TO PAY:

COMPENSATORY DAMAGES IN THE AMOUNT OF $2,000,000.00, AGAINST EACH DEFENDANT, JOINTLY AND SEVERALLY.

PUNITIVE DAMAGES IN THE AMOUNT OF $250,000.00 AGAINST EACH DEFENDANT.

A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.

PLAINTIFF'S COST IN THIS SUIT.

ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER, AND EQUITABLE.

JUNE 4TH, 2015

RESPECTFULLY SUBMITTED,
Gerald L. Tucker, K-93107
R.J. DONOVAN CORR. CENTER, 480 ALTA ROAD, SAN DIEGO, CA. 92179
SAN DIEGO, CA. 3/14/2015

VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED ON INFORMATION AND BELIEF, AND, AS TO THOSE, I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED: AT SAN DIEGO, CA., JUNE 4TH, 2015

Gerald L. Tucker

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Gerald L. Tucker,

v.

Case Number: ________

Daniel Paramo, Warden

PROOF OF SERVICE

I hereby certify that on June 4th 2015, I served a copy 1st of the attached Complaint, Civil Rights,

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the United States Mail at R.J. Donovan Corr. Center, 480 Alta Road, San Diego, CA. 92179.

(List Name and Address of Each Defendant or Attorney Served)

Ms Kamala D. Harris
Attorney General
P.O. Box 944255
Sacramento, CA. 94244

Clerks Office
U.S. District Court
Eastern District of California
2500 Tulare St., Suite 1501
Fresno, CA. 93721, 93721

I declare under penalty of perjury that the foregoing is true and correct.

Gerald L. Tucker

(Signature of Person Completing Service)